F I L E D
United States Court of Appeals
Tenth Circuit

OCT 13 1998

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS
### TENH CIRCUIT

STEVANA CASE, ANDY CASE, a minor, by and through his parent and next friend, STEVEN CASE; STEVEN CASE, individually, AMANDA GREB, a minor, by and through her parent and next friend, CYNTHIA GREB; CYNTHIA GREB, individually; REBEKKA KAMBERG, a minor, by and through her parent and next fried, MARY-LANE KAMBERG; JOHANNA KAMBERG, a minor, by and through her parent and next friend, MARY-LANE KAMBERG; MARY-LANE KAMBERG, individually; SAM PIERRON, a minor, by and through his parent and next friend, AMY PIERRON; ABBY PIERRON, by and through her parent and next friend, AMY PIERRON; AMY PIERRON, individually; JON STONGER, a minor, by and through his parent and next friend, REX STONGER; and REX STONGER, individually,

     Plaintiffs-Appellants,

v.

UNIFIED SCHOOL DISTRICT NO. 233, JOHNSON COUNTY, KANSAS, and DR. RON WIMMER, in his capacity as Superintendent of Schools,

     Defendants-Appellees.

No. 96-3328

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-2100-GTV)

David J. Waxse of Shook, Hardy & Bacon, L.L.P., Overland Park, Kansas, (J. Eugene Balloun and Celia K. Garrett, of Shook, Hardy & Bacon, L.L.P. and John E. Kirkland, New City, New York, with him on the briefs) for Plaintiffs-Appellants.

Daniel B. Denk (Gregory P. Goheen with him on the brief) of McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, for Defendants-Appellees.

Before **SEYMOUR**, **ANDERSON**, and **HENRY**, Circuit Judges.

**HENRY**, Circuit Judge.

This is an appeal solely from an award of attorney's fees. Attorneys for the plaintiffs won a 42 U.S.C. § 1983 judgment against the defendant school district and thus were entitled under 42 U.S.C. § 1988 to attorney's fees and expenses and under 28 U.S.C. § 1920 to costs associated with the prosecution of the case. They requested fees, expenses, and costs totaling $481,330.83; the district court awarded them $82,603.88, and they appeal. We affirm in part, reverse in part, and remand.

## I.  BACKGROUND

Appellants are attorneys for a group of students, their parents, and a teacher who sued a Kansas school district in federal court for declaratory and injunctive relief under 28 U.S.C. § 1983.  Because only the attorneys, rather than the plaintiffs, are the real parties-in-interest in this appeal, we will refer to the attorneys as the appellants in this opinion.  The plaintiffs, who were recruited by appellants, alleged violations of § 11 of the Kansas Bill of Rights ("Liberty of press and speech; libel.") and the First and Fourteenth Amendments to the United States Constitution because of (1) a decision by the district's school board to remove a book discussing homosexuality from the district's libraries and (2) the district's pre-distribution review and censorship of a student's fliers complaining of the book's removal.  They filed their complaint on March 9, 1994.

The parties litigated the case thoroughly.  During a contentious discovery process in which the district court sanctioned the defendants for discovery violations, the parties produced 3,263 pages of documents and deposed twenty-seven witnesses in thirty-four sessions resulting in 3,227 pages of deposition testimony.  Additionally, both parties filed motions for summary judgment; the defendants moved to strike portions of the plaintiffs' complaint and later moved to dismiss the complaint; the plaintiffs filed a motion to exclude the defendants' expert witnesses; the defendants requested reconsideration of three of the district

3

court's orders; and both sides hired expert witnesses, whom they later agreed not to use. On July 24, 1995, the district court entered an order finding that one of the plaintiffs lacked standing and dismissing the count of the complaint relating to the pre-distribution review of the flier. On November 29, 1995, after a four-day bench trial at which the parties presented twenty-two witnesses and 117 marked exhibits and after considering post-trial briefs from the parties, the court found that graduated students and their parents did not have standing and entered judgment against plaintiffs on their Fourteenth Amendment due process claim. However, the court ruled in favor of the remaining plaintiffs on their First Amendment and Kansas Bill of Rights claims. The district court's order reflects that the case was a fairly novel one: There was no binding precedent, and the district court ultimately relied on a plurality opinion of the Supreme Court addressing a similar issue. The district court ordered the school district to return the book to its libraries no later than January of 1996.

As the attorneys of prevailing plaintiffs in a civil rights action, the appellants were entitled to an award of attorney's fees, expenses, and costs associated with the prosecution of the case. See 42 U.S.C. § 1988; 28 U.S.C. § 1920. The defendants offered to settle the appellants' bills for $170,000. The appellants refused, and the parties could not agree on an acceptable fee at a mediation session with a magistrate judge. The appellants then filed a motion

4

with the district court requesting fees, expenses, and costs. With their motion, the appellants submitted billing statements to the court and the affidavits of three attorneys who found their billings to be reasonable. The appellants also claimed to have voluntarily eliminated all hours of summer associates, document clerks, and librarians and made an additional reduction of five percent of their overall hours which, they averred, eliminated time spent on media-related activities and their unsuccessful Fourteenth Amendment claim. After these reductions, they were left with a claim for 2,883.8 attorney hours and 1,179.59 legal assistant hours. They asked for attorney rates between $240 an hour and $90 an hour and legal assistant rates between $70 an hour and $50 an hour. Their final total fees request was $444,139.96.

In response to the appellants' motion, the defendants submitted a memorandum requesting that the district court award only a fraction of the appellants' fee request. The defendants' affidavits showed that their attorneys had billed 1,050.3 hours defending the case. However, the defendants admitted that the 1,050.3 figure did not include the hours expended by Mike Norris, the school district's regular attorney, who defended and took depositions, produced documents, met with and prepared witnesses, corresponded with appellants, and appeared at trial. Therefore, the 1050.3 hour figure was significantly less than the total hours defendants actually spent defending the case. The defendants

submitted an attorney affidavit which suggested that 1,405 hours were reasonable to prosecute the case at $150 an hour for partners, $90-$100 an hour for associates, and $50 an hour for legal assistants. However, in their response brief, the defendants undercut their own witness's recommendation and urged that 1,300 hours were reasonable to prosecute the case at $135 an hour for partners, $85 an hour for associates, and $50 an hour for legal assistants. Using these figures, they argued for a lodestar fee of $123,500.

After reviewing this evidence, the district court believed that reductions in the appellants' proposed billings were necessary. As a result, in calculating the lodestar, the court cut both hours and rates charged. The district court ultimately awarded appellants substantially less than requested by either party: 510 attorney hours at rates of $125 an hour for partners and $100 an hour for associates and 150 legal assistant hours at a rate of $35 an hour. Using these hours and rates, the court's lodestar fee award totaled $64,250. The court then rejected the defendants' argument that the lodestar should be reduced because the plaintiffs did not prevail on all of their claims; the court found that the defendants' proposed reduction was not justified because the Fourteenth Amendment claims were "intrinsically related" to the First Amendment claims.

In an effort to summarize the fee requests and determinations outlined above, we have created the following chart which lists the relevant fee award

reduction for each attorney and legal assistant. The chart sets forth the appellants' fee request, the defendants' response to that request, and the court's final awards. It also includes entries for copies, faxes, and Westlaw costs, the charges for which were either cut or disallowed in their entirety by the district court. Although the district court made other reductions in the appellants' billings, those reductions were not appealed, and, therefore, the appellants have waived any challenge to those reductions. Additionally, the defendants did not appeal any aspect of the district court's ruling.

Although the defendants' affiant's opinion of the appellants' reasonable hours is not a decisive factor in this decision, we wish to explain the reasonable hour figure we attribute to defendants' affiant in the chart. The affiant concluded that the appellants requested 2,810.85 attorney hours rather than the 2,883.8 attorney hours they reported to the district court. Using this lower number, he testified that the appellants' requested hours should be reduced "on the order of 50 percent," Aplts' App. vol. VII, at 2219, or to 1,405 attorney hours. After reviewing his affidavit and the appellants' billings, we cannot determine how the defendants' affiant derived the 2,810.85 figure. However, the appellants have not challenged his math but rather have used the 1,405 number in their arguments to the district court and this Court. Therefore, we use that figure in the chart.

| | Appellants Claimed | Defendants Suggested | District Court Awarded |
|---|---|---|---|
| **Attorneys** | | | |
| Marjorie Heins (ACLU) | 147.7 hours at $240/hour | Their affiant stated that a reasonable bill was 1,405 hours at $150/hour for partners and $90 to $100/hour for associates. The appellees disagreed and stated that 1,100 hours at $135/hour for partners and $85/hour for associates was reasonable. | None |
| Eugene Balloun | 500 hours at $240/hour | | 160 hours at $125/hour |
| David Waxse | 324.4 hours at $180/hour | | 160 hours at $125/hour |
| John Bullock | 1,690.2 hours at $100/hour | | 190 hours at $100/hour |
| Scott Nehrbass | 75.6 hours at $90/hour | | None--not mentioned in district court order |
| Kevin Karpin | 145.9 hours at $90/hour | | None--not mentioned in district court order |
| **Total Attorney Fees** | 2,883.8 hours & $382,655.25 [$402,795-5%] | 1,100 hours & $113,500 | 510 hours & $59,000 |
| **Legal Assistants** | | | |
| Ms. Seels | 233.4 hours at $70/hour | 200 hours at $50/hour | 150 hours at $35/hour |
| Ms. Heald | 71.55 hours at $65/hour | | |
| Ms. Rinehart | 873.14 hours at $50/hour | | |
| Ms. Lary | 1.5 hours at $50/hour | | |
| **Total Legal Assistant Fees** | 1,179.59 hours & $61,484.71 [$64,720.75-5%] | 200 hours & $10,000 | 150 hours & $5,250 |

| Copies | $11,391.00 | N/A | None |
|---|---|---|---|
| Fax Charges | $858.86 | N/A | None |
| Westlaw Charges | $8,500.49 | N/A | $4,250.25 |

## II.   STANDARD OF REVIEW

"[A]n attorneys' fee award by the district court will be upset on appeal only if it represents an abuse of discretion."  Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986).  We also apply abuse of discretion review to the taxing of costs by the trial court.  See U.S. Ind., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1245 (10th Cir. 1988).  "'We customarily defer to the District Court's judgment because an appellate court is not well suited to assess the course of litigation and the quality of counsel.'"  Mares, 801 F.2d at 1200-01 (quoting Copeland v. Marshall, 641 F.2d 880, 901 (D.C. Cir. 1980) (en banc)).  The district court "saw 'the attorneys' work first hand,'"  Poolaw v. City of Anadarko, 738 F.2d 364, 368 (10th Cir. 1984) (quoting Higgins v. State ex. rel. Oklahoma Employment Sec. Comm'n, 642 F.2d 1199, 1203 (10th Cir. 1981)), and "'has far better means of knowing what is just and reasonable than an appellate court.'"  Mares, 801 F.2d at 1201 (quoting Trustees v. Greenough, 105 U.S. 527 (1882)).

Although the above cases refer to the deference given the trial court, our

9

precedent does in fact limit that deference. Case law requires "'the district court to provide a concise but clear explanation of its reasons for the fee award.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). "Such explanations must 'give us an adequate basis for review.' And, in reaching their determinations district courts must follow the guidelines established by the Supreme Court and this court." Id. (quoting Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983)).

### III.   ANALYSIS

Title 42 U.S.C. § 1988(b) provides that in certain federal civil rights actions, including those brought pursuant to 42 U.S.C.§ 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Along with the fees and expenses allowed under § 1988, a prevailing party in a civil rights action is normally entitled to costs under 28 U.S.C. § 1920. See Jane L. v. Bangerter, 61 F.3d 1505, 1517 (10th Cir. 1995) (citing Fed. R. Civ. P. 54(d)); Ramos, 713 F.2d at 560. A plaintiff who "'succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit'" is a "prevailing party," Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)), and the parties do not dispute

10

that the plaintiffs in this case were prevailing parties under the statutes.

## A.    THE LODESTAR

"To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." Jane L., 61 F.3d at 1509. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Mares, 801 F.2d at 1201 (quoting Hensley, 461 U.S. at 437).

As to services provided by non-lawyers, if "law clerk and paralegal services are . . . not reflected in the [attorney's fee], the court may award them separately as part of the fee for legal services. The court should scrutinize the reported hours and the suggested rates in the same manner it scrutinizes lawyer time and rates." Ramos, 713 F.2d at 558-59. Thus, under the rubric of 42 U.S.C. § 1988 "attorney's fees," the fees for attorneys, law clerks, and legal assistants are all determined in the same fashion: multiplying reasonable hours by reasonable rates to reach a "lodestar" amount.

### 1.    Reasonable Hours

The district court should take the first step in calculating the lodestar by

determining the number of hours reasonably spent by counsel for the party seeking fees. See Ramos, 713 F.2d at 553. Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. See id. A district court is justified in reducing the reasonable number of hours if the attorney's time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time. Jane L., 61 F.3d at 1510.

Once the district court has adequate time records before it, it must then ensure that the winning attorneys have exercised "'billing judgment.'" Ramos, 713 F.2d at 553 (quoting Copeland, 641 F.2d at 891). Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. See id. Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable. See id. at 553-54 (giving as an example time spent doing background research).

After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable.

> In determining what is a reasonable time in which to perform a given task or to prosecute the litigation as a whole, the court should consider that what is reasonable in a particular case can depend upon facts such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side.   Another factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services.  "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." . . .  The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.

Id. at 554 (quoting Copeland, 641 F.2d at 891).  The district court may also reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative."  Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

Because mandating that the district court identify hours reasonably expended by billing entry or litigation activity would, in many cases, be practically impossible, "[t]here is no requirement . . . that district courts identify and justify each disallowed hour.  Nor is their any requirement that district courts announce what hours are permitted for each legal task."  Mares, 801 F.2d at 1202. In fact, in cases such as this one, in which the parties generated thousands of pages of written work product and the appellants submitted well over a hundred pages in billing statements with several entries per page, "[i]t is neither practical nor desirable to expect the trial court judge to have reviewed each paper in th[e]

13

massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours." Copeland, 641 F.2d at 903. Instead, "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." Mares, 801 F.2d at 1203.

While the parties may submit affidavits from experts regarding reasonableness of the hours billed, the practice is not very helpful when the testimony varies greatly. See Ramos, 713 F.2d at 555 n.6. More important is the discretionary determination by the district court of how many hours, in its experience, should have been expended on the specific case, given the manueverings of each side and the complexity of the facts, law, and litigation. See id. at 554.

The appellants urge that it is per se an abuse of discretion for the district court to award fewer hours than even the defendants agreed were reasonable. We disagree. The district court is not bound by the opinions of the parties regarding the reasonableness of the time they spent on the litigation. While we think it a rare case in which the district court should award significantly fewer hours than those proposed as reasonable or billed by the losing party in a civil rights suit, cf. Ramos, 713 F.2d at 554 ("The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required."), we cannot

14

say that the district court per se abused its discretion by awarding fewer hours than urged by defense counsel. To hold otherwise would allow two law firms which, although adversaries in the proceeding, were in agreement in their use of unreasonable billing practices, to force the district court to award compensation it found unreasonable.

Additionally, we wish to clarify the limited probative value of another argument made by both parties. In their briefs to this court, the appellants and defendants made much of the percentage of the appellants' fee request that was ultimately awarded by the district court, and both parties compared and contrasted that percentage figure with the percentage of § 1988 fee requests awarded in other cases. We note that while the legal principles applied in each § 1988 case are the same, the ultimate percentage of fees awarded is necessarily specific to the facts of the particular fee request. For instance, as we will discuss, we completely disallow Ms. Heins's fees in this case because her billing entries were not requisitely detailed and because the appellants' did not prove that her assistance was necessary to their case. To cite this opinion, with fact-specific hourly reductions such as this one, for the broader proposition that a certain percentage fee reduction is justified, would ignore the case-specific nature of the billings here and be a futile legal strategy.

Having clarified the relevant legal tests and concluded that the district

15

court did not per se abuse its discretion by awarding fewer hours than suggested by the defendants, we now examine the district court's specific hourly reductions and apply the relevant legal mandates to determine if the district court abused its discretion.

### a. Hours Billed Prior to Recruiting the Plaintiffs

The district court denied expenses incurred prior to recruiting the plaintiffs because "time spent and expenses incurred prior to [client recruitment] are generally not assessed to the client" and, therefore, are not appropriately charged to the opposing party. Aplts' App. vol. VII, at 2304 (Mem. and Order filed Sept. 6, 1996). We agree with this statement of the law and its application here. In some instances, such as when the litigation involves particularly difficult questions of standing, mootness, or ripeness, attorneys may be awarded time necessary to determine who should be the appropriate plaintiffs or whether the suit may even be brought. Pre-recruitment time also may be awarded where attorneys have done pre-recruitment work with an advocacy group representing a class. See Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1188 (11th Cir. 1983) (holding that time billed after entering discussions with a local NAACP chapter but prior to recruiting local plaintiffs for a class action should be awarded because the local NAACP chapter was, in effect, a representative of the class).

16

None of these situations was present in this case. Although standing was a hotly contested issue, the plaintiffs with standing were intuitively those who use a school library and, thus, could allege an injury: students and teachers. Nor does the national chapter of the American Civil Liberties Union (ACLU), which was active in this case through Ms. Heins, play a community advocacy role comparable to that of the local NAACP chapter in Dowdell. It is our conclusion that in this case the district court did not abuse its discretion in denying hours billed prior to client recruitment.

### b.     Hours Billed by Ms. Heins of the ACLU

The district court rejected all fees attributable to Ms. Heins, an ACLU attorney whom the appellants consulted, because she "neither entered an appearance before th[e] court nor attended any pre-trial hearing or deposition." Aplts' App. vol. VII, at 2304. On appeal, the appellants argue this was error and allege that Ms. Heins did enter an appearance before the district court.

We do not think that whether Ms. Heins entered an appearance is the relevant question. Fees for legal assistants are properly awarded as attorney's fees, although they do not appear before the court. Additionally, we can easily contemplate a scenario in which a junior associate spends hours of appropriately billable time on litigation yet remains unknown to the court. Finally, requiring an

17

attorney to enter an appearance before becoming eligible for fees could lead to the strange result pointed out by appellants that "if [Ms. Heins] unnecessarily had flown from New York to attend hearings and assist in depositions, [the district court] might have considered her other work legitimate." Aplts' Opening Br. at 33.

Although our cases do not require an entry of appearance in order for the court to grant compensation, the district court's conclusion to award no fee to Ms. Heins was not an abuse of discretion. The appellants are not entitled to reimbursement for Ms. Heins's hours because they have failed to establish that her work was reasonably necessary to their case and because her billing statements are not clear. If an attorney is consulting on a case, the assistance provided must be actually necessary or essential to proper representation rather than merely comforting or helpful. See Mares, 801 F.2d at 1206. The entries on Ms. Heins's billing records do not disclose any "assistance, expert or otherwise, which was actually necessary to plaintiffs' case." Id. Almost all of Ms. Heins's billing entries are for telephone calls with the appellants or for "review" of documents. See Aplts' App. vol. VI, doc. D1. None of the billing entries describe the subject matter of the telephone conversations or the documents she was reviewing, and the few entries that suggest she generated original work product are too conclusory to merit a fee award. See Jane L., 61 F.3d at 1510.

18

For instance, on April 10, 1995, there is an entry which reads, in its entirety, "memo" for .3 hours. Similarly, on May 8, 1995, the entry reads "research" for one hour. On the tenth of that same month, the entry is "draft outline" for one hour. These excerpted billing entries are representative and provide less detail than is required in a billing statement submitted for an award of fees for original work product, see id., or an award of fees for work product actually necessary to the appellants' case, see Mares, 801 F.2d at 1205-06. Finally, as the defendants point out, if Ms. Heins's contributions had been essential, one would expect the appellants' billings to have been significantly reduced. They were not. The district court did not err in disallowing Ms. Heins's submitted time because her records were imprecise and because the billing records do not show that her assistance was necessary to the case.

> c.   Hours Billed Unsuccessfully Resisting Arguments Relating to Standing

The district court rejected time spent unsuccessfully resisting arguments relating to the standing of certain plaintiffs because those plaintiffs had "standing deficiencies [that] should have been apparent when the complaint was filed." Aplts' App. vol. VII, at 2304. Because the district court could not decipher from the billing records how much time was spent on standing issues, it considered this fact in making a general reduction in lodestar hours.

19

The appellants ineffectively challenge this reduction in a footnote.  See Aplts' Opening Br. at 28 n.12.  The district court did not reduce the fee simply because the appellants did not prevail on this issue, but rather because the billing records did not show which hours related to standing arguments and because the standing deficiencies, in the district court's judgment, were obvious.  The district court was well within bounds to consider lack of success on the standing issues and its inability to segregate appellants' billing records for time spent on the issues to support a general reduction in time.

d.    Hours Billed in Conference and Conducting Background Research

The district court ordered "'a general reduction in hours . . . to achieve what the court perceives to be a reasonable number,'" Aplts' App. vol. VII, at 2305 (quoting Carter, 36 F.3d at 956), reflected in reductions (1) for time spent in "conference" since the billing entries did not show how much time was spent in or what happened at conference and (2) for background research because "'[h]ours spent familiarizing oneself with the general area of law should be absorbed in the firm's overhead and not be billed to the client.'" Id. at 2306 (quoting Phelps v. Hamilton, 845 F. Supp. 1465, 1472 (D. Kan. 1994), rev'd on other grounds, 76 F.3d 393 (10th Cir. 1996)).

The district court was correct in reducing the appellants' hours claimed

20

because of these deficiencies. In Ramos, we noted that time spent reading background material designed to familiarize the attorney with the area of the law would normally be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary with time spent conducting background research is presumptively unreasonable. See Ramos, 713 F.2d at 554.

As for the "conference" billings, counsel for the party claiming the fees has the burden of proving its fee entitlement by presenting the district court time records that show how billed hours were allotted to specific tasks. See id. at 553. Billing entries such as those submitted by plaintiffs, which simply refer to time spent in "conference," do not meet these requirements. See Jane L., 61 F.3d at 1510.

e.    Size of General Reduction

In Parts III.A.1.c. and III.A.1.d. of this opinion, we have concluded that the district court properly made general reductions to the appellants' requested hours because of difficulties with the appellants' billings regarding certain standing issues, background research, and conferences. However, while those reductions were of a proper type, they were of an improper degree. Even a cursory review of the appellants' billing records shows that the hours spent on resisting standing, conferences, and background research did not account for 80% of the appellants'

21

requested time.

As we have already noted, there are legitimate cases in which a large general reduction in requested fees is warranted. See Mares v. Credit Bureau of Raton, 801 F.2d 1197 (10th Cir. 1986). In Mares, however, we said such a reduction is permissible "so long as there is sufficient reason for its use." Id. at 1203. There, the district court specifically gave inexperience as the reason for eliminating a large portion of trial preparation time, and that finding was clearly supported since counsel had been in practice just a year when he took the case, conceded his lack of experience, and billed every hour logged. We also pointed out that counsel "failed entirely on his major theory of damage," "grossly overvalued what the case would warrant," and "[d]oubtless, he uselessly expended time on those theories." Id. at 1204. In short, the record supported both the type and the degree of the reductions made by the district court.

Unlike in Mares, the record in this case does not support the degree of the reductions made by the district court. The district court found that 510 hours were a reasonable number of hours for appellants to spend litigating a case in which defendants acknowledged billing 1,050 hours. Moreover, the 1,050 hours the defendants confessed did not include the hours spent on this litigation by the school district's regular attorney, who defended and took depositions, produced documents, met with and prepared witnesses, corresponded with appellants, and

22

appeared at trial. Additionally, as we have already noted, this case concerned novel legal issues, which defendants vigorously litigated through motions to dismiss and for summary judgment and by disputing discovery so that motions to compel and sanctions were necessary. Again, we iterate that the defendants' hours are not a floor for the appellants' reasonable time because the defendants may have billed or litigated unreasonably. However, if this is to be the "rare case," supra at 14, in which the district court is justified in awarding significantly fewer hours to plaintiff then proposed as reasonable by the losing defendant, the district court must give us a fuller explanation for its actions.

Here, the district court said nothing at all about why the hours spent by defendants' counsel are not relevant, nothing about the maneuvering necessitated by the defendants' litigation strategy, and so on. See City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986) ("the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response"); Ramos, 713 F.3d at 554 (noting that the district court "should consider that what is reasonable in a particular case can depend upon factors such as . . . the responses necessitated by the maneuvering of the other side"). The district court did not say defendants billed or litigated unreasonably, but if defendants did, the court should tell us if, in its judgment, the appellants responded inappropriately to defendants' unreasonable efforts. Instead, the

23

district court only mentioned three limited areas of this litigation as justification for throwing 80% of the appellants' fee request out the window.

We simply have no way of knowing why the court chose to depart so dramatically from defendants' expenditure of time in setting appellants' counsel's hours and, accordingly, no way of reviewing the district court's decision. We certainly do not require district courts to produce the equivalent of an alternative billing record complete with a blow-by-blow account of how many hours were reasonably spent on a given reasonable task. Even under the abuse of discretion standard, however, we are not comfortable affirming an 80% reduction in appellants' hours to a level over 50% below the time spent by the defendants in a hotly litigated case involving novel First Amendment issues without at least some explanation for why defendants' evidence of reasonable hours and the time defendants actually spent was not relevant to determining appellants' reasonable hours. If § 1988 is to have any meaningful effect in ensuring sound representation for civil rights plaintiffs, the district court's discretion in awarding fees cannot be so broad as to allow it <u>carte blanche</u> to give a victorious plaintiff half the time to obtain a favorable result as the defendants spent in losing without providing us more justification for so doing. We therefore reverse the district court's general reduction in hours and remand for further consideration by the district court in light of this opinion.

f.    Hours Billed by Attorneys Not Mentioned by the District Court

Although the district court's order discussed several attorneys by name, it failed to mention Scott Nehrbass or Kevin Karpin, two attorneys who submitted bills for roughly 220 hours of work.  We must assume that the district court inadvertently overlooked these attorneys.  Consequently, we remand for the district court to grant attorney's fees for the reasonable number of hours spent by Mr. Nehrbass and Mr. Karpin on this case.  See Bratcher v. Bray-Doyle Ind. Sch. Dist. No. 42, 8 F.3d 722, 726 (10th Cir. 1993), and Smith v. Freeman, 921 F.2d 1120, 1124 (10th Cir. 1990) (remanding for an initial determination of appropriate fee award when district court inadvertently failed to consider certain fee requests).

g.    Hours Billed Researching and Drafting Motions on Attorney's Fees

"An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application."  Mares, 801 F.2d at 1205; and see Glass v. Pfeffer, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988); Hernandez v. George, 793 F.2d 264, 269 (10th Cir. 1986).  However, the district court refused to reimburse appellants for any "[t]ime spent conducting research and drafting motions pertaining to attorney fee recovery" because "the time

25

submitted by [appellants] for post-trial work is excessive." Aplts' App. vol. VII, at 2305.

At least four circuits have held that when a party submits a § 1988 attorney's fee request that is outrageously excessive, the court may respond by awarding no fees at all. See Environmental Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258-60 (D.C. Cir. 1993); Fair Housing Council v. Landow, 999 F.2d 92, 96-97 (4th Cir. 1993); Lewis v. Kendrick, 944 F.2d 949, 958 (1st Cir. 1991); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980). The reason for acting punitively when a party asks for fees that are outrageously excessive is to deter attorneys from "mak[ing] unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." Stackler, 612 F.2d at 1059.

We do not need to decide whether to adopt this rule because it is not applicable here. We have reviewed the appellants' post-trial billings, including those attributable to their fee request, and find that they cannot be characterized as "obviously inflated to an intolerable degree," id., and thus warranting a punitive sanction. Appellants spent roughly eighty hours preparing their fee request. See Aplts' App. vol. VI, at 2047-50, 2073-77 (billing entries describing work on fee request). The eighty hours were used to write a twenty-five page memorandum in support of their motion for attorney's fees, prepare seven lengthy

26

attorney affidavits, copy four cases from Westlaw for submission to the district court, and compile almost 200 pages of raw billing statements and twenty-eight pages of descriptions of various billing deductions for media-related activities and unsuccessful claims. In toto, the fee request and supporting documents were almost 400 pages long. It would be inappropriate to conclude that spending eighty hours on a fee request of this magnitude is outrageously unreasonable or excessive. Therefore, we conclude that the district court's complete denial of time spent preparing the fee request was an abuse of discretion. On remand, the district court should award appellants a reasonable number of hours for their work on the attorney's fee application.

### h. Hours Billed by Legal Assistants

The district court cut the legal assistants' claimed hours under the same general reduction it made in the attorneys' requested billings. "The court should scrutinize [legal assistants'] hours and the suggested rates in the same manner it scrutinizes lawyer time and rates." Ramos, 713 F.2d at 559. Since we are remanding for reconsideration of the general reductions in attorneys' hours, we also remand for reconsideration of the general reduction in legal assistants' time.

## 2. Rates

As we observed earlier, a district court following the applicable precedent will be given considerable deference in its determination of a reasonable attorney's fee. However, the case law reveals that a district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it "consistently grant[s]." Aplts' App. vol VII, at 2307. Instead, the district court should base its hourly rate award on what the evidence shows the market commands for civil rights or analogous litigation. See Beard v. Teska, 31 F.3d 942, 955-57 (10th Cir. 1994).

As the chart reflects, the appellants requested hourly rates of $240, $180, $100, and $90 based on attorney expertise as well as partnership and associate status. They also requested legal assistants' rates of $70, $65, and $50 an hour. With their rate request, the appellants submitted their own affidavits attesting that these are the rates they customarily charge. Mr. Waxse's affidavit, for example, suggests that he is highly experienced in the area of civil rights and analogous litigation. According to his affidavit, he has specialized since 1971 in the areas of employment litigation, constitutional law, and employee rights; he has authored several scholarly publications on civil rights and employment law issues; and he has been president of the Kansas Legal Services Corporation and is currently General Counsel for the ACLU of Kansas and Western Missouri. See Aplt. App. at 1857. Mr. Balloun's affidavit suggests that, while less experienced in civil

28

rights cases, he is very experienced in areas of complex trial litigation that may be analogous to civil rights litigation. See id. at 1818. On the other hand, the associate who did much of the work in this case is a much less experienced lawyer. The appellants also submitted the affidavits of three other attorneys, one with years of experience in civil rights litigation, who confirmed that the appellants' rates were consistent with the rates charged by comparably skilled lawyers in the community. Importantly, two of the affiants also stated that the rates were comparable to those charged "in this type of litigation." Aplts' App. vol. VI, at 1881, 1892 (emphasis added).

In response, the defendants submitted the affidavit of an attorney who stated that he believed "the more appropriate award for this community on the issue of prevailing hourly rates" to be $150 an hour for partners, $90 to $100 an hour for associates, and $50 an hour for legal assistants. Aplts' App. vol. VII, at 2222. The affiant concluded, "In each instance, the hourly rate is intended to reflect the prevailing market rate for this community for the type of litigation and experience necessary for the prosecution of this case." Id. (emphasis added). However, in their brief, the defendants suggested that more appropriate rates were $135 an hour for partners, $85 an hour for associates, and $50 an hour for legal assistants. See id. at 2182-83. The defendants also submitted an affidavit showing that their partners billed $90 an hour, associates billed $80 an hour, and

legal assistants billed $50 an hour, see id. at 2232, although they admitted that the school district's regular attorney, who did significant work on the case, billed $115 an hour, see id. at 2164 n.2.

After considering "the authority, the affidavits and the court's own familiarity with the relevant rates in the community," the court granted "the hourly rates [it] consistently grant[s]" because it saw "no reason to make an exception in the instant case." Id. at 2307. The rates the district court consistently grants and which it granted to the appellants are $125 an hour for a partner, $100 an hour for an associate, and $35 an hour for a legal assistant.

The district court abused its discretion in setting rates that ignored the market rate evidence before it. "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Ramos, 713 F.2d at 555. When a district court is presented with sworn affidavits from both parties that the market commands rates at a certain level, the court must elevate the dictates of the market above its customary rate. See Blum v. Stenson, 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community . . . ."); Beard, 31 F.3d at 955-57 (concluding that the district court erred in

30

disregarding uncontroverted evidence of the local market rate and, instead, awarding the plaintiffs' attorney's customary rate).  As Judge Posner wrote, "[i]t is the function of judges in fee litigation . . . to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order. . . .  The object in awarding a reasonable attorney's fee . . . is to simulate the market where a direct market determination is infeasible."  Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.), 962 F.2d 566, 568, 572 (7th Cir. 1992); and see Blum, 465 U.S. at 895 n.11 (noting that determining the market rate is "inherently difficult" and providing some guidance as to method).

Requiring the district court to rely upon outside market evidence when setting hourly rates while granting it broad discretion to use its personal experience in determining the reasonable number of hours expended may seem contradictory.  It is not.  While the invisible hand of the market sets rates, it cannot grasp, in the way the district court can, the complexities of the litigation and the parties' work product.  Additionally, the district court constantly produces legal product and manages trials and, therefore, is somewhat of an expert in the time that is required to conduct litigation; in contrast, the court does not regularly shop for legal services and does not necessarily have expertise in the rates charged by civil rights attorneys.  Thus, the district court may stray outside the

31

recommendations of the parties when awarding <u>hours</u> to prevailing attorneys because it knows best the time which reasonably should have been spent on the case. However, in order to comply with precedent, the district court must award <u>rates</u> compatible with competent, trustworthy evidence of the market. As long as its decision is grounded in appropriate market evidence, its ruling merits abuse-of-discretion deference from this court. Such evidence includes affidavits submitted by the parties and other reliable evidence of local market rates for civil rights litigation at the time fees are awarded.[1]

We have previously pointed out that "[a]lthough the rate charged by the losing counsel may be relevant in determining a reasonable hourly rate, we have discounted that information where . . . the opposing counsel represents a governmental entity." <u>Sussman v. Patterson</u>, 108 F.3d 1206, 1212 (10th Cir. 1997). This is because

> private attorneys often charge lower rates to the government because of counterbalancing benefits such as repeat business, and "[w]here the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer."

<u>Brooks v. Georgia State Bd. of Elections</u>, 997 F.2d 857, 869 (11th Cir. 1993)

---

[1] We have reviewed the <u>1997 Economic Survey of Kansas Lawyers</u> found in Volume 66, Number 10 of the December 1997 Journal of the Kansas Bar Association and discussed by both parties in their supplemental authority and think that, had it been before the district court, it may have provided some evidence of market rates.

(quoting Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1300 (11th Cir. 1988)); see also Malloy v. Monahan, 73 F.3d 1012, 1018-19 (10th Cir. 1996) ("[a]ttorneys in defendants' civil rights cases are typically paid regardless of their success in a case and receive payment on a shorter billing cycle").

We do not mean to suggest that a plaintiff's attorney is automatically entitled to his or her normal market rate. Instead, the parties should submit, and the district court must consider, evidence of the hourly rate the attorneys would be able to charge if working in the civil rights field. See Ramos, 713 F.2d at 555. "Lawyers working outside their fields of expertise may deserve an hourly fee lower than their normal billing rate because of their lack of experience in the civil rights field. . . . The quality of the lawyer's performance in the case should also be considered." Id. at 555; cf. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566 (1986) (holding that once the market rate has been set, it should not ordinarily be adjusted for quality of counsel because "the quality [of] . . . representation [is] normally . . . reflected in the reasonable hourly rate . . . ."). Thus, the district court may lower the rates normally charged by attorneys who have not shown that they are experts in civil rights or analogous litigation, see Ramos, 713 F.2d at 555, and, therefore, could not command their normal hourly rates in the marketplace for that type of litigation. Conversely, the

33

district court may also grant a rate higher than the attorney's traditional rate if the market so dictates. See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1493 (10th Cir. 1994).

Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate. See Lucero v. City of Trinidad, 815 F.2d 1384, 1385 (10th Cir. 1987) ("Absent other evidence of prevailing market rates the district court must rely on all relevant factors known to the court in establishing the reasonable rate to be applied . . . to derive the 'lodestar' figure.") (emphasis added).

In this case, the appellants and the defendants submitted satisfactory, albeit contradictory, affidavits regarding rates for civil rights attorneys of similar skill and experience in the locality. The district court should have considered these affidavits and granted rates in accordance with any of them or arrived at a compromise among them, or, in the alternative, set the rates according to other competent market evidence. Using either method, the court must keep in mind the controlling principle, alluded to above, that its job ultimately is "to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order . . . ." Steinlauf, 962 F.2d at 568. Accordingly, we reverse the district court's decision setting the rates for the attorneys and the legal

assistants in this case. We remand for the district court to redetermine a reasonable hourly rate for each attorney and for the legal assistants under the guidelines we have articulated herein.

## B. OTHER EXPENSES

Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate. See Ramos, 713 F.2d at 559. The attorneys requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled. See Mares, 801 F.2d at 1208. In this case, the parties do not dispute that fax and Westlaw charges are expenses normally itemized and billed in addition to the hourly rate. Therefore, expenses for those services should be awarded to the extent they are reasonable.

### 1. Fax Expenses

The appellants requested $858.86 in fax charges. The district court awarded them nothing, concluding that the request was "out of line with normal costs and, more importantly, largely duplicative [s]ince faxes were generally followed up with a mailing." Aplts' App. vol. VII, at 2308. Having reviewed the fax charges, we find no abuse of discretion and affirm this portion of the district

35

court's order. The majority of the fax charges the appellants attempted to bill to the defendants was for <u>incoming</u> faxes, at a cost of between $.25 and $1.00 per page. See Aplts' App. vol. VI, at 2059 (entries for five-page fax received 6/26/95 costing $1.25 and six-page fax received 12/1/95 costing $6.00). While we can appreciate that a firm must cover its overhead, the appellants have failed to establish that a client would think it reasonable to pay $.25-$1.00 per page for incoming faxes. The defendants should not be forced to pay this freight either. As for the outgoing faxes, the appellants, who have the burden to prove the reasonableness of all their expenses, see Mares, 801 F.2d at 1208, have not shown that the district court was erroneous in its conclusion that the faxes represented a duplication of effort and expense. We find no abuse of discretion.

### 2.    Westlaw Expenses

The appellants claimed $8,500.49 in expenses for electronic research, and the district court awarded one-half, or $4,250.25. The district court reduced the award for two reasons: (1) it was not able to separate research related to the appellants' prevailing claims from research on claims which they lost; and (2) it determined that Westlaw was not the most cost effective research method. We need rely only upon the first stated ground in affirming the trial court. The district court is correct that the appellants' Westlaw billings are not identified by

the issues presented at trial. See Aplts' App. vol. VI, at 2071. "Trial courts are justified in denying compensation where the affidavits and time records in the fee submissions fail to differentiate adequately between the costs attributable to billable and non-billable items." Mares, 801 F.2d at 1209. Therefore, the district court did not abuse its discretion when it denied a fraction of the undifferentiated Westlaw charges, and we affirm this portion of the district court's order.

## C. COSTS

"For items not reimbursable as attorney's fees under § 1988, the general costs statute, 28 U.S.C. § 1920, is controlling. Section 1920 allows certain costs . . . including . . . '[f]ees for exemplification and copies of papers necessarily obtained for use in the case.'" Ramos, 713 F.2d at 560 (quoting 28 U.S.C. § 1920(4)) (emphasis added). "Of course, the burden is on the prevailing plaintiffs to establish the amount of compensable costs and expenses to which they are entitled. Prevailing parties necessarily assume the risks inherent in a failure to meet that burden." Mares, 801 F.2d at 1208.

The appellants claimed $11,391.60 in copying costs, all of which the district court denied because "[u]sing [appellant's] own figure of $0.16 per copy, this translates to 71,194 copies. The court finds this to be a grossly excessive number, and, accordingly, will award no recovery . . . ." Aplts' App. vol. VII, at

37

2311. Perhaps recalling the Bard's aphorism that the better part of valor is discretion, the appellants have not attempted to justify on appeal the number of copies their cost request indicates. Rather, they have taken the fall-back position that the district court should merely have reduced the cost award to compensate them for a reasonable number of copies. See Aplts' Opening Br. 35. We disagree.

The appellants—not the district court—had the burden to prove that the copies for which they sought reimbursement were necessarily obtained for use in this case by pointing to the existing record or supplementing it with additional proof, and the amount of their request must have been reasonable. See U.S. Ind., Inc., 854 F.2d at 1245. We have examined the appellants' fees and costs briefs submitted to the trial court and find no effort on their part to prove either that the copies were necessarily obtained for use in the case or that the remarkable number of copies they generated was reasonable. Nor, as we have already noted, did they attempt to justify their copying costs to us. Therefore, they have failed to carry their burden of showing that any of their copying costs were reasonable or necessary to their case.

We do not require that a civil rights attorney justify each copy he or she makes, and we do not think that the burden to justify copies is a high one. For instance, the "use [of materials] at trial by counsel or the court readily

demonstrates necessity," id. at 1246, and we can glean simply from scanning the appellants' seven-volume appendix that the appellants submitted at least 1,500 pages of documents to the district court which they could have proven reasonable, had they made an effort to do so. However, even assuming the appellants made multiple copies of each document submitted to the district court, they still would have had to show the reasonableness of tens of thousands of copies. They did not and have not done so. It was not the district court's burden to support the substantial weight of 71,194 copies or any lesser amount, and it did not abuse its discretion in denying all copying costs, as no copies were proven necessary to the appellants' cause.

## IV. CONCLUSION

The district court's reduction in the appellants' requested hours was dramatic and somewhat remarkable in that the district court allowed significantly fewer hours than recommended by the defendants' affiant. We are troubled by this result, especially given the legal maneuvering necessitated by the defendants' litigation strategy and resistance to discovery, which led the district court to sanction them. While the district court is entitled to make a general reduction in requested hours, even under our deferential standard of review the court must provide us with sufficient reasoning in the circumstances of the case to permit us

to judge its exercise of discretion. We reiterate, however, that the district court is in the best position to determine the number of hours reasonably expended in this litigation and that the appellants have the burden to prove that their hours were reasonable. Because the district court did not provide sufficient explanation for the size of the general reduction in this case, we must REMAND for further proceedings by the district court. In addition, we REMAND for the court to determine a reasonable number of hours for Mr. Nehrbass and Mr. Karpin and for the time the appellants spent preparing their fee request. Finally, we REMAND for the district court to reevaluate and reset a reasonable hourly rate for the attorneys and legal assistants based on market evidence. In all other respects, the judgment of the district court is AFFIRMED.