**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CHARLES W. MASTERSON,

Plaintiff-Appellee,

v.

YELLOW FREIGHT SYSTEM, INC.,

Defendant-Appellant.

Nos. 98-6025 & 98-6126
(D.C. No. CIV-96-2112-C)
(W.D. Okla.)

ORDER AND JUDGMENT  *

Before **PORFILIO** , **BARRETT** , and **KELLY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

these appeals.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9.  The cases are

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

We have consolidated these cases for purposes of disposition. In case No. 98-6025, defendant-appellant Yellow Freight System, Inc. (Yellow Freight) appeals from the district court's orders entering a permanent injunction; denying Yellow Freight's motion for judgment as a matter of law; and granting in part and denying in part Yellow Freight's motion for stay pending appeal. [1] In case No. 98-6126, Yellow Freight appeals from the district court's order awarding attorney's fees to plaintiff-appellee Charles W. Masterson. We affirm the district court's orders denying the motion for judgment as a matter of law and awarding attorney's fees to Masterson, but remand to allow the district court to reconsider its order of injunctive relief.

## I.

Masterson began working as an over-the-road driver for Yellow Freight in 1974. In 1981, he suffered a severe work-related accident resulting in amputation of his left arm. Over the course of the next several years, he rehabilitated himself by driving a farm tractor and his own truck. He subsequently passed a

---

[1] Yellow Freight has not sought a stay pending appeal in this court. See generally Fed. R. App. P. 8. Although it appealed from the order denying in part its motion for stay, it advances no arguments which specifically target the denial of a stay. The entry of this judgment on the merits makes any claim for a stay pending appeal moot.

-2-

Department of Transportation (DOT) driving test and was issued a waiver allowing him to drive trucks using a driving ring and a spinner knob.

Masterson returned to driving for Yellow Freight in 1988. He drove using the driving implements and a prosthetic left arm, relying primarily on his right arm for steering. At the time of trial in this matter, he drove a relay run for Yellow Freight between Oklahoma City and Albuquerque. [2]

In October or November of 1994, Masterson injured his right shoulder and had to leave work. He returned to work in mid-November, but re-injured the shoulder. Dr. David Ellis thereafter gave him a release to work which restricted him to driving tractors with power steering.

Yellow Freight refused to dispatch Masterson with the power steering limitation. Masterson went without work for a number of weeks, which caused him financial hardship. Dr. Ellis eventually removed his restriction on driving nonpower steering tractors, at Masterson's request, so that he could go back to driving for Yellow Freight. Ellis warned Masterson, however, that if he

---

[2] The trucks Masterson drives for Yellow Freight have two basic components: the tractor, where the engine is located and from which the driver drives the truck, and the trailer, which carries the freight. Trailers may be attached or detached and switched between tractors. Once a tractor has been hitched to a trailer, a great deal of exertion is required to steer the truck. The amount of exertion required is lessened considerably if the tractor is equipped with power steering. Jimmy Noal, a driver and witness for Masterson at trial, estimated that the effort required to turn a power steering truck is only ten percent of that required for a nonpower steering truck.

continued to drive nonpower steering tractors, he could eventually lose the use of his right arm. Ellis testified at trial that he was shocked that Yellow Freight was still dispatching Masterson in trucks without power steering.

Masterson brought this suit under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (ADA), contending that Yellow Freight had failed to accommodate his disability by supplying him with a truck with power steering. A jury awarded him damages on his ADA claim, and the district court entered an injunction requiring Yellow Freight to dispatch him only on power steering tractors.

II.

Yellow Freight challenges the district court's denial of its renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). In reviewing the grant or denial of such motions we apply the following standard:

> Judgment as a matter of law is appropriate if during a jury trial a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. We review a district court's grant of this motion de novo. A court may grant the motion only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. On review, we examine the evidence in the light most favorable to [the nonmoving party], extending to [him] the benefit of all reasonable inferences.

Davis v. United States Postal Serv., 142 F.3d 1334, 1339 (10th Cir. 1998) (citations and quotations omitted).

Under 42 U.S.C. § 12112(a), employers are prohibited from discriminating against qualified individuals with disabilities in connection with their employment. An employer discriminates when he fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee." Id. § 12112(b)(5)(A). An employee is "qualified" for a position when, with or without reasonable accommodation (which he must describe), he can perform the essential functions of the position. See id. § 12111(8); White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995).

Yellow Freight identifies the ability to drive a truck without power steering as an essential function of the job of relay driver. Yellow Freight contends from this definition that either Masterson is not "qualified" because he cannot perform that essential function, or that Masterson's proposed accommodation is unreasonable because it would eliminate one of the essential functions of his job.

The record demonstrates, however, that Masterson can drive a nonpower steering truck. In fact, he conceded at trial that there are times when he must drive a nonpower steering tractor because no power steering tractors are available. The problem, he claims, is that Yellow Freight often requires him to drive a nonpower steering tractor even when a power steering tractor is available and could be switched to his load. We narrow the real point of contention between the parties, therefore, to whether it is an essential function of

-5-

Masterson's job to drive a nonpower steering truck <u>even on occasions when other power steering tractors are available and could be switched to his load</u>. Yellow Freight contends that it is.

The district court properly instructed the jury that the "essential functions" of a job are those duties which are "fundamental" to the position. <u>See</u> 29 C.F.R. § 1630.2(n)(1). In reviewing the question of whether there was a legally sufficient basis for the jury's determination in Masterson's favor on the "essential function" issue, we are mindful that "[i]f we venture to second-guess then we simply usurp the most critical function of the jury in ADA cases, i.e., the injection of some indispensable common sense in the determination of what is or is not an essential function." <u>Barber v. Nabors Drilling U.S.A., Inc.</u>, 130 F.3d 702, 707 (5th Cir. 1997).

Approximately seventy percent of Yellow Freight's tractors are equipped with power steering. Yellow Freight states that because of the time-sensitive nature of its business, its relay drivers are required to drive whatever tractor arrives with the inbound trailer, whether or not it has power steering. Its witnesses testified that switching tractors to accommodate relay drivers causes unacceptable delays and is therefore not permitted.

Yellow Freight admits, however, that relay drivers are allowed to switch tractors if there are mechanical problems with the inbound tractor. Significantly,

-6-

"mechanical problems" include not only gross vehicle malfunctions but also broken air conditioning. [3] There was testimony that air conditioning swaps are frequently requested by outgoing drivers and that Yellow Freight approves them even though they cause delays. There was also testimony that it would take no more time to switch a tractor for power steering than it would for air conditioning, [4] and that the delay involved would only be a matter of minutes.

Finally, there was testimony that at least some of Yellow Freight's dispatchers pursued a de facto policy of allowing drivers to switch tractors when the assigned tractor was "too old" or did not have power steering. Yellow Freight insisted that such swaps were against company policy, but there is little evidence that its supervisory personnel made any concerted effort to police the practice. This significantly undercut Yellow Freight's assertion that switching tractors causes disastrous delays.

A reasonable jury could have determined from the testimony presented that Yellow Freight exaggerated the disruption to its operations which would be

---

[3]    Yellow Freight is obligated by contract to supply its drivers with tractors with functional air conditioning during the summer months.

[4]    Yellow Freight put on testimony that swapping a tractor for Masterson would cause additional delays because he must take time to attach the implements which allow him to drive as a handicapped person. While this testimony may speak volumes about Yellow Freight's attitude toward Masterson's disability, it is irrelevant to the issues here. Yellow Freight does not argue that it is an essential job function to be able to drive a relay tractor without taking time to attach assistive devices for the handicapped.

caused by allowing Masterson to switch to a tractor with power steering. Because switching for air conditioning was allowed, despite the attendant delays, a jury could have disbelieved Yellow Freight's rationale that it was essential that a relay driver drive whatever tractor was assigned to him. Finally, the jury could have concluded that the ability to drive a nonpower steering truck when power steering trucks were available was not an essential function of Masterson's employment.

Yellow Freight argues, alternatively, that since Masterson admits that he is currently capable of driving nonpower steering trucks at least some of the time using his prosthesis and implements, the jury should have found that he does not need any further accommodation. We disagree.

The jury heard testimony from Dr. Ellis, who stated that continued driving of nonpower steering tractors was likely not only to aggravate Masterson's shoulder injuries but would eventually wear out his right shoulder joint. Ellis further opined that if Masterson's right arm wore out, he would be unable to work.[5] A reasonable jury could have concluded from this that the more time

---

[5] We reject any implication that accommodation is only necessary to facilitate a disabled person's present ability to perform his job. In determining whether an individual has a disability which must be accommodated, the regulations require consideration of the "permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(iii). The expected impact of continuing to drive a nonpower steering truck on a frequent basis was a perfectly legitimate consideration for the jury.

Masterson spent driving nonpower steering trucks, the more likely he was to permanently injure himself, and that use of the prosthesis and implements alone therefore was not a sufficient accommodation of his disability.

III.

Our narrowing of the previous issue spotlights a potential problem with the district court's order providing Masterson with injunctive relief. The district court permanently enjoined Yellow Freight from providing Masterson with any vehicle other than one equipped with power steering. It further ordered that on any occasion that Yellow Freight did not provide Masterson with a power steering tractor, he would not be required to drive but Yellow Freight must pay him as if he had. Yellow Freight contends that the injunction is overbroad and must be dissolved.

As noted, Masterson concedes that he must drive a nonpower steering tractor on occasions when no power steering tractor is available to be switched. [6] The ability to drive a nonpower steering vehicle on such occasions clearly is an essential function of his job. This is true even though such occasions may occur

---

[6] Our task was made more difficult, however, by Masterson's vacillation concerning this point. Compare Appellant's App. Vol. IV at 1012 (requesting, in post-trial submission concerning injunctive relief, that Masterson be provided with a power steering vehicle on all trips); with Appellee's Br. at 12 ("Masterson has never demanded that he drive power steering vehicles exclusively.").

only infrequently.  Cf. Brickers v. Cleveland Bd. of Educ. , 145 F.3d 846, 849-50 (6th Cir. 1998) (holding that duties performed only occasionally can be essential to a job); Holbrook v. City of Alpharetta , 112 F.3d 1522, 1527 (11th Cir. 1997) (same).

An employer is not required under the ADA to accommodate an employee's disability by eliminating an essential function of his job.  See Smith v. Blue Cross Blue Shield of Kan., Inc. , 102 F.3d 1075, 1076 (10th Cir. 1996), cert. denied , 118 S. Ct. 54 (1997).  We recognize that the district court was concerned with Yellow Freight's willingness to comply with the ADA given the evidence.  At the same time, the injunction may have the unintended effect of relieving Masterson of having to drive a nonpower steering truck when one with power steering is truly unavailable.  Plainly, some type of injunctive relief is in order, but the district court should reconsider whether the injunction could be more narrowly tailored to prevent future violations of the ADA, the most important factor in deciding the propriety of the injunctive relief.  See Roe v. Cheyenne Mountain Conference Resort, Inc. , 124 F.3d 1221, 1230-31 (10th Cir. 1997).

IV.

In its final issue, Yellow Freight contends that the district court improperly awarded attorney's fees to Masterson.  We review the district court's award of attorney's fees for abuse of discretion.  See Case v. Unified School Dist. No 233 ,

157 F.3d 1243, 1249 (10th Cir. 1998). Masterson supported his request for attorney's fees with an affidavit containing an attached itemization which listed the services rendered by his attorney and the billable hours she spent on each item. Yellow Freight contends that the itemization is inadmissible hearsay and should have been stricken. It further argues that Masterson's counsel failed to substantiate the time she spent by supplying contemporaneous time records.

We reject Yellow Freight's hearsay argument. Yellow Freight mischaracterizes the itemization as a "record of regularly conducted activity," see Fed. R. Evid. 803(6), requiring separate compliance with that hearsay exception to be admissible. The itemization, however, is not only identified as an attachment to the affidavit but is clearly an integral part thereof. The affidavit itself purports to have been made upon personal knowledge. The district court properly relied on the itemization in making its attorney fee award.

Masterson requested a total fee award of $91,336.50, representing 341.10 attorney hours at $215 per hour and 60 attorney hours at $300 per hour. In its response, Yellow Freight contended that Masterson had failed to establish that the request was based on contemporaneous billing records. See Case, 157 F.3d at 1250 (noting requirement of meticulous, contemporaneous billing records to support fee award). Yellow Freight accused counsel of "reconstruct[ing] her billing records by going through the file and guesstimating the amount of time she

-11-

spent on this case." Appellant's App. Vol. IV at 1090. Counsel did not specifically deny that charge, but "represent[ed] that the submission is a true and correct accounting of the work performed in the case." Id. at 1132. The district court, finding counsel's reply "not helpful," id. at 1164, and noting that some entries did not appear to be supported by meticulous, contemporaneous records, reduced the fee award to $43,740, less than half the amount requested.

A court may award an attorney's fee based on a reconstructed record. See Anderson v. Secretary of Health & Human Servs. , 80 F.3d 1500, 1506 (10th Cir. 1996). In such cases, a general reduction of hours to achieve what the district court determines is a reasonable number may be appropriate. See id. Although there was no general reduction in the number of hours in this case, there was a substantial reduction, and we cannot say that the district court abused its discretion in making the award it did.

The judgments of the United States District Court for the Western District of Oklahoma are AFFIRMED with the exception of the district court's order entering a permanent injunction, which is REMANDED for reconsideration in light of this order and judgment. Masterson's motion to dismiss this appeal for lack of jurisdiction is DENIED.

Entered for the Court

James E. Barrett
Senior Circuit Judge