**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ICE CORPORATION,

      Plaintiff - Appellee,

v.

HAMILTON SUNDSTRAND
CORPORATION; RATIER-FIGEAC,
S.A.S.,

      Defendants - Appellants.

No. 10-3104 and 10-3328
(D.C. No. 05-CV-04135-JAR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

---

In this consolidated appeal, Defendants-Appellants Ratier-Figeac, S.A.S.

("Ratier") and Hamilton Sundstrand Corporation ("Hamilton") appeal from the

district court's denial of their Rule 50(b), Fed. R. Civ. P., motion for judgment as

a matter of law (case number 10-3104) and award of attorney's fees (case number

10-3328). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part,

reverse in part, and remand for a determination of punitive damages.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Background

In 2003, Airbus Military selected Ratier, an affiliate of United Technologies Corporation, to supply propellers for a proposed military transport aircraft. Aplt. App. 593-94, 637-38. Hamilton, a subsidiary of United Technologies, worked with Ratier to develop the propellers. Id. at 593-94, 656-67. Ratier and Hamilton ("Defendants") in turn chose Plaintiff-Appellee ICE Corporation ("ICE") as an independent contractor to supply a deicing controller for the propellers.

During negotiations, Ratier sent ICE a form Master Terms Agreement ("MTA") and form Purchase Agreement ("PA"). Id. at 761, 791, 804. ICE responded with a Supplier Quotation, which expressly stated, "CONFIDENTIAL: Information contained in this document is Competition Sensitive and is privileged and/or proprietary." Id. at 676. The parties never executed the MTA or the PA because they disagreed on a pricing issue.

In November 2004, Ratier and ICE entered into a Memorandum of Understanding ("MOU") whereby ICE would design and develop the deicing controller for the propellers, and Ratier would pay ICE for reaching certain milestones. Id. at 706-09. The parties began performance under the contract. Due to changes in design specification, however, the parties later engaged in new price negotiations, and were unable to agree to new terms. Id. at 609-18. Ratier reopened bidding and selected Artus, a French company, to replace ICE in

September 2005. Id. at 645-46.

In October 2005, ICE sent Ratier a letter demanding payment for an outstanding invoice of $153,708. Id. at 720-21, 757; Aplt. Br. 21. Ratier refused, and ICE sued, alleging claims for breach of express and implied contract, negligent misrepresentation, unfair competition, misappropriation of trade secrets under the Kansas Uniform Trade Secrets Act ("KUTSA"), unjust enrichment, fraud, and fraudulent concealment. Aplt. App. 162. Relevant to this appeal, ICE alleged that the Defendants misappropriated the following trade secrets by passing them on to Artus: (1) the communication method between the stationary and rotating elements of the controller, (2) a table of fault codes used to communicate deicing problems to the plane's computer, and (3) a built-in test ("BIT") system for detecting problems with the deicing system. Id. at 513-15, 1099-111.

Defendants moved for summary judgment on, among other things, the misappropriation of trade secrets claims, arguing that Ratier owned the trade secrets, and thus, the Defendants could not have misappropriated them. Specifically, they argued that the MOU was silent on the issue of ownership but that Ratier owned the trade secrets under the common-law "hired-to-invent" doctrine. Id. at 1221-22; Aplee. Supp. App. 160. The district court denied Defendants' motion on this issue, apparently of the view that the evidence was controverted, and stated that "the parties' conduct, as well as their written

- 3 -

agreements, is sufficient for a reasonable jury to conclude that *ICE owns* the alleged trade secrets in this matter." Aplt. App. 1513 (emphasis added). The case proceeded to trial on ICE's breach of duty of good faith and fair dealing, fraud, and misappropriation of trade secrets claims against Ratier and unjust enrichment and misappropriation of trade secrets claims against Hamilton. ICE Corp. v. Hamilton Sundstrand Corp., 615 F. Supp. 2d 1256, 1258 (D. Kan. 2009).

At the close of evidence, Defendants made an oral Rule 50(a), Fed. R. Civ. P., motion for judgment as a matter of law. Defendants sought to incorporate by reference all arguments they submitted in their voluminous summary judgment briefs but made specific arguments concerning only the breach of duty of good faith and fair dealing, fraud, and negligent misrepresentation claims. Aplt. App. 1548. The court took the motion under advisement at the time and ultimately denied the motion. Id. at 1540; ICE Corp. v. Hamilton Sundstrand Corp., No. 05-4135-JAR, 2009 WL 1116319 (D. Kan. Apr. 22, 2009).

The jury found that Ratier willfully, wantonly, or maliciously misappropriated all three trade secrets and awarded ICE $4,795,300 in compensatory damages. Aplt. App. 315C. The jury also made an advisory award of $10,000,000 in punitive damages against Ratier. Id. In addition, the jury found that Hamilton willfully, wantonly, or maliciously misappropriated the BIT system and table of fault codes, but did not award compensatory damages because of an error in the verdict form. Id. at 314-15; ICE Corp., 615 F. Supp. 2d at

- 4 -

1258-59. The jury rendered an advisory award of $2,500,000 in punitive damages against Hamilton. Aplt. App. 315. The court then held a separate bench trial on the compensatory damages against Hamilton and a hearing on the punitive damages against both Defendants. ICE Corp., 615 F. Supp. 2d at 1257-58; ICE Corp. v. Hamilton Sundstrand Corp., 615 F. Supp. 2d 1266, 1267-68 (D. Kan. 2009). The court awarded lost profits compensatory damages of $4,795,300 and punitive damages of $2,397,650 against Hamilton and punitive damages, under KUTSA, of $9,590,600 against Ratier.

After judgment was entered, Defendants filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P., seeking, among other things, to renew their summary judgment argument that Ratier owned the trade secrets. Aplt. App. 350, 359-65. In addition, they filed a Rule 52(b), Fed. R. Civ. P., motion asking the court to amend the judgment against Ratier, arguing that punitive damages cannot exceed $5 million under Kan. Stat. Ann. § 60-3702. Id. at 453, 461, 493-96.

The district court denied Defendants' post-trial motions on these issues. At the outset, the court concluded that, given the number of claims and issues presented by both parties, Defendants' reference to their summary judgment briefs in their oral Rule 50(a) motion did not preserve all sufficiency-of-the-evidence arguments for their Rule 50(b) motion. Id. at 1549-51. Rather, the court held that Defendants had preserved the sufficiency-of-the-evidence

arguments concerning only the breach of contract, fraud, and negligent misrepresentation claims—the arguments that Defendants expressly argued in their Rule 50(a) motion. Id. The court then rejected Defendants' arguments that Ratier owned the trade secrets. Id. at 1557-59. In addition, the court concluded that it properly awarded punitive damages against Ratier under KUTSA, which permits punitive damages up to twice the amount of compensatory damages. Id. at 1605-08; Kan. Stat. Ann. § 60-3322.

While the post-trial motions were pending, ICE filed a motion for attorney's fees, and the court ultimately awarded $1,138,013.25 in fees. ICE Corp. v. Hamilton Sundstrand Corp., No 05-4135-JAR, 2010 WL 4683981, at *14 (D. Kan. Nov. 12, 2010).

In case number 10-3104, Defendants appeal the denial of their post-trial motions, arguing that (1) they owned the trade secrets under the "hired-to-invent" doctrine or as a matter of contract and (2) the district court erred in awarding punitive damages in excess of the $5 million cap imposed by Kan. Stat. Ann. § 60-3702. In case number 10-3328, they contend that the district court improperly awarded attorney's fees.

## Discussion

### A. Ownership of Trade Secrets

Defendants first argue that the district court erred in denying its Rule 50(b)

motion on ownership because Ratier owns the trade secrets either under the common-law hired-to-invent doctrine or as a matter of contract. Aplt. Br. 38-53. ICE contends that ownership was a factual issue that was submitted to the jury and that Defendants have not preserved for appeal any sufficiency-of-the-evidence argument regarding ownership because they did not raise it in their Rule 50(a) motion. Aplee. Br. 18-19. Defendants disagree, arguing that the district court denied summary judgment on ownership as a purely legal matter. Aplt. Reply Br. 5-6.

After reviewing the record, we agree with ICE that ownership was a factual issue submitted to the jury and that Defendants did not preserve the issue for appeal. Before discussion, we explain in further detail how the ownership issue was raised and addressed in the district court.

### 1. Procedural History

Defendants moved for summary judgment on the issue of ownership, arguing that Ratier owned all the trade secrets under the common-law hired-to-invent doctrine. Aplt. App. 1221-22; Aplee. Supp. App. 160. Specifically, Defendants argued that the MOU was silent on the issue of ownership, and thus, the court should look to common law to determine ownership. Under the common-law hired-to-invent doctrine, Defendants argued, "[i]f an employer pays you to design, the employer owns the fruit of your labor." Aplt. App. 1221 (quotation marks and citation omitted). Thus, they asserted that Ratier owned the

results of ICE's work because Ratier hired ICE to design and develop the propeller deicing controller.  Id. at 1222.

In response, ICE argued that the intent of the contracting parties is a question of fact for the jury and that "[all] of the evidence in this case proves that the parties intended, understood and agreed that ICE owned its proprietary and trade secret design work." Id. at  1087-88, 1090.  ICE argued that the MOU incorporated by reference ICE's Supplier Quotation—which expressly states that ICE's design information was confidential and proprietary to ICE—and noted that every witness addressing ownership during discovery understood that ICE owned the trade secrets.  Id. at 1088-89.  In addition, ICE argued that the hired-to-invent authority cited by Ratier did not apply.  Id. at 1090-92.

Defendants responded, again arguing that the MOU was silent on ownership and that the hired-to-invent doctrine should control.  Id. at 1402-03.  In addition, Defendants argued that the evidence presented at summary judgment confirmed the parties' understanding that Ratier owned any trade secrets developed in connection with the deicing controller.  Id.

In its decision denying summary judgment, the court engaged in two separate analyses regarding the issue of ownership: (1) ownership under the hired-to-invent doctrine and (2) ownership based on the parties' conduct and written agreements.  Id. at 1508-13.  The court distinguished the authority cited by Defendants concerning the hired-to-invent doctrine and concluded that the

doctrine does not apply to independent contractors hired to specifically design a product, such as ICE. Id. at 1508-12.

After addressing the hired-to-invent doctrine, the court then addressed ownership based on the parties' conduct and written agreements. Initially, the court stated that "[u]nder the facts and circumstances of this case, it is clear that ICE owns the alleged trade secrets." Id. at 1512 (footnote omitted). In reaching this conclusion, the court relied on EDO Corp. v. Beech Aircraft Corp., 715 F. Supp. 990, 995 (D. Kan. 1988) for the proposition that a contract between parties can dictate which party owns technology developed pursuant to the contract. The court then explained that the MOU incorporated by reference the Supplier Quotation and that the language of the Supplier Quotation—as well as the language of another agreement entered into by ICE and Hamilton—supported the contention that ICE owned the trade secrets. Aplt. App. 1512-13. In conclusion, the court stated that "the parties' conduct, as well as their written agreements, is *sufficient for a reasonable jury to conclude* that ICE owns the alleged trade secrets in this matter." Id. at 1513 (emphasis added). We read this conclusion to mean that the district court determined there were genuine disputes as to material fact regarding ownership, despite its original presupposition.

What's more, Defendants agreed to the following jury instruction explaining the elements of ICE's misappropriation claim:

ICE asserts a claim against both Hamilton and Ratier for violation of

the Kansas Trade Secrets Act. In order to prevail on this claim, ICE must prove each of the following essential elements: . . .

2. ICE is the owner of the information.

Aplt. App. 298. Thus, ownership was treated as a factual issue submitted to the jury.

ICE's conduct at trial bolsters this conclusion. ICE presented the Supplier Quotation and other documents exchanged between the parties indicating that all information contained within the documents was confidential and proprietary. See, e.g., Aplt. App. 675-709; Aplee. Supp. App. 739, 767, 802, 1450, 1467, 1608, 1802-04. Witnesses for ICE testified that Defendants never expressed any concern or disagreement with the legends on the documents. See, e.g., Aplee. Supp. App. 1450-51, 1467, 1601-02. In addition, ICE presented emails from Hamilton representatives stating that "[w]e have a lot of detailed design information from ICE on what they were doing and it is not right for this information to be shared with their potential competitors," id. at 976, 1552, 1557, and "I am very concerned about how much and what kind of technical information has been transferred to these guys by [Ratier] . . . I just want to be sure that we are not violating any proprietary agreement with ICE," id. at 1005, 1558.

On appeal, Defendants argue that in denying summary judgment the district court incorrectly decided as a matter of law that ICE owned the trade secrets. Aplt. Br. 44-45; Aplt. Reply Br. 9. However, the court expressly stated that the

parties' conduct and their written agreements were sufficient for a reasonable jury to conclude that ICE owns the trade secrets. Aplt. App. 1513. Thus, the district court did not decide that ICE, as a matter of law, owned the trade secrets. Rather, the district court denied Defendants' motion for summary judgment on the issue and submitted it to the jury because a reasonable jury could conclude that ICE owned the trade secrets under the agreements between the parties.

2.    Analysis

"'The denial of summary judgment based on factual disputes is not properly reviewable on an appeal from a final judgment entered after trial.'" Copar Pumice Co., Inc. v. Morris, 639 F.3d 1025, 1031 (10th Cir. 2011) (quoting Haberman v. The Hartford Ins. Group, 443 F.3d 1257, 1264 (10th Cir. 2006)). Rather, the way to contest evidentiary sufficiency at trial is through subsequent motions for judgment as a matter of law pursuant to Rules 50(a) and (b) and appellate review of the motions if denied. See Ortiz v. Jordan, 131 S. Ct. 884, 893 (2011); Kelley v. City of Albuquerque, 542 F.3d 802, 820 (10th Cir. 2008) (citation omitted). And ordinarily, a party cannot raise an argument in a Rule 50(b) motion that it did not raise in its Rule 50(a) motion. See Therrien v. Target Corp., 617 F.3d 1242, 1250 n.2 (10th Cir. 2010) (citations omitted). We recognize Defendants' argument that a legal issue decided on summary judgment need not be raised through Rule 50 motions, see Aplt. Reply Br. 6 (citing Ruyle v. Cont'l Oil Co., 44 F.3d 837, 841 (10th Cir. 1994)), but we simply cannot agree

that the district court decided the ownership issue as a matter of law.

Thus, for us to review a sufficiency-of-the-evidence argument regarding ownership, Defendants were required to make the argument in their Rule 50(a) and 50(b) motions. Defendants have done neither. The district court held that Defendants failed to make such an argument in their Rule 50(a) motion, and Defendants have not challenged that point here. In addition, Defendants never made a sufficiency-of-the-evidence argument regarding ownership in their Rule 50(b) motion. See Aplt. App. 361-65. Nor do they make that argument here. Rather, they argued in their Rule 50(b) motion and before us that, as purely legal matters, Ratier owned the trade secrets under the hired-to-invent doctrine or as a matter of contract. Because Defendants failed to raise a sufficiency-of-the-evidence argument on ownership in their Rule 50(a) and 50(b) motions, we cannot review the jury's decision on ownership. Defendants' failure to object to the jury instruction on ownership further supports this conclusion of waiver. See Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1115 (10th Cir. 2005) (citing Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1147-48 (10th Cir. 1999)).

Defendants contend that the jury decided a different ownership issue than the one they present here, namely, whether the parties jointly developed the table of fault codes. Aplt. Reply Br. 6 n.1. In seeking summary judgment, Defendants argued—separately from their general ownership argument—that there was insufficient evidence to establish that they misappropriated the table of fault

codes because ICE did not own the fault codes. Aplt. App. 1240. The district court disagreed, concluding that there was a genuine issue of material fact regarding this issue. Id. at 1521. Although this issue was submitted to the jury, there is no indication that it was the only ownership issue submitted for the jury to decide. See id. at 298. In addition, Defendants' argument ignores the district court's express statement that a reasonable jury could conclude the ICE owned *all* the trade secrets pursuant to their conduct and agreements. Id. at 1513.

Defendants also contend that the court's conclusion at summary judgment that the hired-to-invent doctrine did not apply to ICE because ICE was an independent contractor was decided as a matter of law and can be reviewed on appeal. Aplt. Reply Br. 8-9. Regardless of the court's ruling on the hired-to-invent doctrine, the court concluded that a reasonable jury could determine ownership based on the parties' conduct and written agreements. Thus, there is no need to look to the common-law hired-to-invent doctrine.[1] Indeed, Defendants have repeatedly argued that the hired-to-invent doctrine does not apply if the agreement between the parties dictates otherwise. See, e.g., Aplt. Br. 44; Aplt. Reply Br. 8; Aplt. App. 360, 1221-22. See also 27 Am. Jur. 2d Employment Relationship § 182 (2011) (hired-to-invent doctrine applies only absent an agreement to the contrary). The jury necessarily found that the ICE owned the

---

[1] Because the issue submitted to the jury was whether ICE owned the trade secrets based on the agreements and conduct between the parties, we need not opine on the district court's analysis of the hired-to-invent doctrine.

trade secrets by agreement.

Accordingly, ownership of the trade secrets was submitted to the jury, and Defendants have not preserved a sufficiency-of-the-evidence argument regarding this issue.

B.     Punitive Damages

Defendants contend that the district court erred in awarding punitive damages of nearly $10 million against Ratier under KUTSA, arguing that the court's award exceeds the $5 million cap imposed by Kan. Stat. Ann. § 60-3702. Aplt. Br. 53-59.  We review the district court's interpretation of state law de novo.  Cooper v. Cent. & Sw. Servs., 271 F.3d 1247, 1251 (10th Cir. 2001).

Section 60-3702 of Kansas's general punitive damages statute governs "any civil action in which exemplary or punitive damages are recoverable" and provides that no award shall exceed the lesser of (1) the annual gross income earned by the defendant or (2) $5 million.  Kan. Stat. Ann. § 60-3702(a), (e).  The lesser amount here is $5 million.  Section 60-3702(f) allows a court to exceed the cap upon a finding that profitability of a defendant's misconduct exceeds or is expected to exceed the cap, and award up to one-and-a-half times the amount of such profit.  Kan. Stat. Ann. § 60-3702(f).

The punitive damages provision of KUTSA provides that "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award [of compensatory damages]."  Kan. Stat.

Ann. § 60-3322(b). Finding that the two statutes conflict and that KUTSA was the more specific of the two, the district court applied KUTSA and awarded $9,590,600 in punitive damages against Ratier. ICE Corp., 615 F. Supp. 2d at 1270-71, 1277. We cannot agree with this analysis.

At the outset, we reject ICE's argument that § 60-3702 does not apply because it applies only to punitive damages awarded "pursuant to this section" apparently referencing § 60-3702(e). Aplee. Br. 54. As stated above, § 60-3702(a) references "any civil action." Notably, the district court relied upon the factors set forth in § 60-3702(b) (which contains identical "pursuant to this section" language) in awarding punitive damages. ICE Corp., 615 F. Supp. 2d at 1271. Indeed, ICE argued in the district court that reliance upon these factors supported the punitive damages award. Aplt. Supp. App. 1741.

Under Kansas law, "[g]eneral and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling." State v. Le, 926 P.2d 638, 640 (Kan. 1996) (internal quotation marks and citation omitted). Kan. Stat. Ann. §§ 60-3702(e) and 3322(b) can be read together and harmonized such that in a trade secret misappropriation action, punitive damages are limited to twice the amount of compensatory damages up to $5 million. See Meitler Consulting, Inc. v. Dooley, No. 05-2126-DJW, 2007 WL 1834008, at *14 (D. Kan. 2007) ("Any award of

- 15 -

exemplary damages under the Kansas Trade Secrets Act is governed by the limitations imposed by K.S.A. 60-3702 . . . .").  Thus, although we recognize ICE's argument that KUTSA "displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret," see Kan. Stat. Ann. § 60-3326(a), we do not see a conflict here.

Even if we perceived a conflict, the more general statutory cap applies here because it appears the Kansas legislature intended the more general cap to control.  Under Kansas law, "older statutes . . . are subordinate to new enactments . . . as the newer statute is the later expression of the legislative intent and so will control if there is a possible conflict between the two."  Jones v. Cont'l Can Co., 920 P.2d 939, 945 (Kan. 1996) (citation omitted).  The Kansas legislature passed § 60-3702 in 1988, seven years after enacting KUTSA.  Compare Kan. Stat. Ann. § 60-3702 with Kan. Stat. Ann. § 60-3322.  Accordingly, § 60-3702 governs.[2]

ICE argues that if § 60-3702 governs, then § 60-3702(f) justifies the punitive damages award over $5 million because Ratier is expected to realize

---

[2]  Following disposition of this issue in the district court, another Kansas federal district court concluded that § 60-3702(a)'s bifurcated system of allowing the jury to determine whether punitive damages can be recovered and then allowing the court to determine the amount of damages violates the Seventh Amendment because the Seventh Amendment requires that the jury be allowed to determine the amount of punitive damages.  See Capital Solutions, LLC v. Konica Minolta Bus. Solutions, USA, Inc., 695 F. Supp. 2d 1149, 1152, 1155-56 (D. Kan. 2010).  The district court in this case held otherwise.  See ICE Corp., 615 F. Supp. 2d at 1269-70.  The parties do not make any arguments on this issue on appeal, and we have no need to address it.

profits of between $85 and $139.5 million on the entire project. Aplee. Br. at 57-59; see also Aplt. Supp. App. 1746-47 (making same argument before district court). In order to award over $5 million dollars under § 60-3702 in this case, however, the court needed to make a finding that "the profitability of the defendant's misconduct exceeds or is expected to exceed" the $5 million cap. See Kan. Stat. Ann. § 60-3702(f). The district court made no such finding because it applied the punitive damages provision in KUTSA. We therefore remand for the district court to apply § 60-3702 and to consider whether the $5 million cap under § 60-3072(e) or the larger cap under § 60-3702(f) applies. We note that to apply subsection (f), the court must find that the profitability of *Ratier's misconduct*—not profitability from the entire project—exceeds or is expected to exceed $5 million.

C.    Attorney's Fees

In case number 10-3328, Defendants appeal the district court's award of attorney's fees under KUTSA.[3]

In its initial request for attorney's fees, ICE requested $1,625,620.75 for 8,843.65 hours of billable time. Aplt. App. 420. The district court granted in part and denied in part ICE's motion, concluding that ICE could receive fees incurred prosecuting the misappropriation claims, but ordering ICE to segregate the time

---

[3] The citations to the parties' briefs and Appendices in this section refer to those submitted for case 10-3328.

spent on the misappropriation claims from the time spent on other, non-compensable claims, and to then resubmit its request. Id. at 427-28.

ICE segregated its fee statements, eliminating any easily identifiable non-compensable time entries and applying an across the board 30% reduction in hours to entries containing compensable and non-compensable claims where it could not otherwise allocate time. Id. at 433-34. ICE also removed all time for the first week of trial and eliminated six entries that it determined were duplications. Id. at 690. ICE subsequently requested $1,257,704.00 for 6,512.75 hours of billable time. Id. at 434-35. The district court reduced the requested amount by 880.85 hours—the time claimed by timekeepers for which ICE could not establish a reasonable hourly rate—and awarded $1,134,438.25 in attorney's fees. ICE Corp., 2010 WL 4683981, at *6, *14.

On appeal, Defendants argue that the district court erred because (1) the court did not consider the punitive damages award in determining whether, as a threshold matter, ICE could receive attorney's fees under KUTSA, and (2) ICE failed to submit meticulous, contemporaneous billing records. We review the legal principles underlying an award of attorney's fees de novo, but the actual award of fees is reviewed for an abuse of discretion. Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 1001 (10th Cir. 2008). In diversity cases, attorney's fees are controlled by state law. Id. (citation omitted).

Under Kansas law, a court may award attorney fees if they are specifically

allowed by statute. Hodges v. Johnson, 199 P.3d 1251, 1262 (Kan. 2009) (citation omitted). A provision of KUTSA, which is identical to Section 4 of the Uniform Trade Secrets Act ("UTSA") provides that if "willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Kan. Stat. Ann. § 60-3323; see Unif. Trade Secrets Act § 4 (2005). The jury found that the misappropriation was willful and malicious; thus, the court had the discretion to award reasonable attorney's fees. See Aplt. App. 329-33.

Relying on a comment to Section 4 of UTSA which states that a court "should take into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorney's fees should be awarded," Defendants argue that the district court erred by not considering the punitive damages award when determining whether it could award attorney's fees. See Aplt. Br. 24-25; Unif. Trade Secrets Act § 4, cmt. They insist that a court must make an express consideration and cite to Progressive Prods., Inc. v. Swartz, 205 P.3d 766, 777-78 (Kan. App. 2009), where the Court of Appeals of Kansas looked to the comments of UTSA to interpret a different provision of KUTSA. Aplt. Br. 24-25. Even if a court should consider punitive damages in determining attorney's fees, the district court did.

In its initial order addressing attorney's fees, the district court concluded that it could make such an award because the jury found that the misappropriation

in this case was willful and malicious. Aplt. App. 419. The court also stated that it would consider the punitive damages award in its determination of reasonableness of fees, but not in its initial determination of whether it could award the fees under KUTSA. See id. at 420 n.10.

In a later order addressing the reasonableness of fees, however, the court paraphrased the Defendants' argument and rejected it:

> B. Defendants' Request that the Court Deny Any Award of Attorneys' Fees
>
> As an initial matter, the Court considers defendants' argument that the Court should altogether deny plaintiff reasonable attorneys' fees because plaintiff already received a significant recovery in compensatory and punitive damages. Since plaintiff's counsel is compensated in this case through a contingency fee arrangement, defendants urge that the significant punitive damages award ensures that plaintiff's attorneys' fees would not diminish its compensatory damages award. To the extent defendants ask this Court to reconsider its determination on plaintiff's entitlement to reasonable attorneys' fees in this matter, the Court declines.

ICE Corp., 2010 WL 4683981, at *2. We read the district court's order as having expressly rejected the Defendants' argument.

Defendants argue that the district court awarded attorney's fees based solely upon the finding that the misappropriation was willful and malicious, but such a reading is contrary to the district court's statement that it considered the argument and declined to change its mind. To be sure, more analysis would have been helpful, but we cannot say that the district court abused its discretion—the comment is general and the district court apparently thought that the conduct at

issue justified an award of attorney's fees notwithstanding the general enrichment of ICE.

Defendants also challenge the court's reasonable fee determination. "In Kansas, '[t]he reasonable value of attorney fees lies within the sound discretion of the district court.'" Beck v. N. Natural Gas Co., 170 F.3d 1018, 1025 (10th Cir. 1999) (quoting Hawkins v. Dennis, 905 P.2d 678, 692 (Kan.1995)). In determining a reasonable fee, Kansas courts multiply a reasonable number of hours worked by a reasonable hourly rate. Sheldon v. Vermonty, 237 F. Supp. 2d 1270, 1274 (D. Kan. 2002) (citation omitted). The applicant bears the burden of supporting its fee request with "'meticulous, contemporaneous time records' that show the specific tasks being billed." Davis v. Miller, 7 P.3d 1223, 1235 (Kan. 2000) (quoting Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998)). The court should consider the eight factors set forth in Rule 1.5 of the Kansas Rules of Professional Conduct in determining the reasonableness of a fee. Id. at 751.

Defendants argue that ICE's use of block billing—the practice of "lumping multiple tasks into a single entry of time"—prevented it from submitting meticulous, contemporaneous records of its attorney's time. See Aplt. Br. 35; Hamilton v. Boise Cascade Exp., 519 F.3d 1197, 1207 (10th Cir. 2008) (internal quotation marks and citation omitted).

There is no per se rule in this circuit mandating a reduction or denial of a

fee request based on block billing.  <u>Cadena v. Pacesetter Corp.</u>, 224 F.3d 1203, 1215 (10th Cir. 2000) (citation omitted).  The district court concluded that the block billing did not prevent it from determining the reasonableness of the fee request, finding instead that it could "easily" review the entries for reasonableness.  <u>ICE Corp.</u>, 2010 WL 4683981, at *6.  Based on its intimate familiarity with the case, the case's complexity, the number of reasonable strategies pursued, the responses necessitated by the maneuvering of the other side, and any potential duplication of services, the court concluded that ICE maintained meticulous and contemporaneous time records and that the revised fee request was reasonable.  <u>Id.</u> at *7-8, *11; <u>Case</u>, 157 F.3d at 1250 (listing reasonableness factors).  In addition, the court considered the factors set forth in Rule 1.5 of the Kansas Rules of Professional Conduct.  <u>See</u> <u>ICE Corp.</u>, 2010 WL 4683981, at *11.  We are unable to say that the court abused its discretion.

AFFIRMED in part, REVERSED in part and REMANDED for a determination of a punitive damages award under Kan. Stat. Ann. § 60-3702.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge